IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ICARE-EMS, INC., a corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. _____ |
| RURAL/METRO CORPORATION, a corporation, | )<br>) JURY DEMANDED |
| Defendant. | )<br>)<br>) |

**COMPLAINT**

Plaintiff, ICare-EMS, Inc. ("ICare"), by its attorneys, Richard J. Braun & Associates, brings this civil action against the Defendant named herein for treble damages, injunctive relief, and attorneys' fees due to Defendant's violations of the antitrust laws of the United States and for tortious interference with business relationship under Tennessee law. Plaintiff demands a jury to try all issues so triable and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought under the antitrust laws of the United States, and particularly Section 2 of the Act of July 2, 1890 (15 U.S.C. §2), commonly known as the Sherman Antitrust Act. The jurisdiction of the Court is invoked under and conferred by

Section 4 and Section 16 of the Clayton Act of October 15, 1914 (15 U.S.C. §§15 and 26).  The Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C §1367(a).

2.     Defendant, Rural/Metro Corporation ("Rural/Metro"), transacts business and is found within the Eastern District of Tennessee, Southern Division.  The interstate trade and commerce hereinafter described is carried on in part, and has been restrained by the unlawful acts hereinafter alleged, within said Eastern District of Tennessee, Southern Division.

## THE PARTIES

3.     Plaintiff ICare is a North Carolina corporation with its principal place of business in Greensboro, North Carolina.  It is engaged, inter alia, in the business of providing emergency medical services and medical transportation services in eastern Tennessee.  In 2010, its sales of these services amounted to approximately $8 million.  It purchases substantial essential equipment and supplies through interstate commerce.

4.     Defendant Rural/Metro is a Delaware corporation with its principal place of business in Scottsdale, Arizona.  It is engaged, inter alia, in the business of providing emergency medical services and transportation services throughout the United States including, but not limited to, Tennessee, Georgia and approximately twenty (20) other states.  Defendant is the leading provider of such services in the geographic markets in which it operates.  Rural/Metro has over 8,000 employees, responds to more than 1 million calls per year and enjoys revenues of more than $500 million per year.  Rural/Metro is a publicly traded company, and one of the largest ambulance companies in North America; it is one of only two companies in the ambulance services business which operate nationally.  Defendant's national presence gives it a competitive advantage in the regional and local markets in which it operates.  Rural/Metro

operates in interstate trade and commerce and purchases substantial equipment and supplies through interstate commerce.

## THE RELEVANT MARKETS AND DEFENDANT'S POSITION THEREIN

5.      This case is concerned with the provision of emergency medical services and medical transportation. These services are hereinafter referred to as "ambulance services." These services are marketed and sold in interstate commerce throughout the United States, including the Eastern District of Tennessee. These services constitute a relevant product market.

6.      Because of the importance of maintaining a reasonably prompt response time, the geographic market for the provision of ambulance services is local in nature and generally limited to a single county. Because the services offered are generally emergency in nature, maintaining a reasonably prompt response time can mean the difference between life and death for patients/consumers of ambulance services. Thus, location of such services must generally be within no more than fifteen (15) miles from a potential patient/consumer in order to provide acceptable levels of service. Defendant Rural/Metro has many advantages over its competitors. The geographic markets, which are the gravamen of this case, are McMinn and Polk Counties in Tennessee.

7.      There are substantial barriers to entry into the provision of ambulance services. Employees must be certified and competently trained. In addition, the ambulance services business is substantially regulated and subject to many legal requirements.

8.      Defendant Rural/Metro has acquired substantial market power in the provision of ambulance services nationally, in Tennessee, in the Eastern District of Tennessee, Southern Division, and in McMinn and Polk Counties. It has acquired its market power through various

conduct and activities which constitute anti-competitive conduct including, but not limited to, acquisitions of competitors, corruptly offering inducements to hospitals in exchange for referrals and through tortious interference with its competitor's contracts with counties and employees.

## COUNT I:

### VIOLATION OF SECTION 2 OF THE SHERMAN ANTITRUST ACT, 15 U.S.C. §2

9. Plaintiff ICare re-alleges and incorporates by reference paragraphs 1-8 of this Complaint as if fully set forth herein.

10. On or about December 1, 2010, Defendant Rural/Metro commenced a pattern of anti-competitive activity directed at Plaintiff ICare by offering inducements to Plaintiff's employees for the purpose of monopolizing and attempting to monopolize the market for ambulance services in the relevant geographic markets, including McMinn County. Defendant offered Plaintiff's employees monetary bonuses or kickbacks if such employees would agree to violate their contracts with Plaintiff by not showing up for their next shift and, instead, become employees of Defendant Rural/Metro. Plaintiff's employees were given twelve (12) hours or less to accept this offer. Employees who accepted received $1,000; $500 was payable prior to Christmas and the balance after ninety (90) days of employment with Defendant. The purpose of Defendant's conduct was to destroy Plaintiff's business and to monopolize and attempt to monopolize the provision of ambulance services in the geographic markets of McMinn and Polk Counties. The effect of such anti-competitive conduct included jeopardizing the health and lives of citizens of McMinn County, to unreasonably restrain the above-described trade and commerce and to attempt to monopolize, and to monopolize the market for the provision of ambulance services in McMinn and Polk Counties in Tennessee.

11. Defendant Rural/Metro has used its monopoly position, and its monopoly power, to obtain an unfair and unlawful advantage in the McMinn and Polk Counties markets for ambulance services and to seriously damage the business and competitive position of its competitors, including Plaintiff, in the McMinn and Polk Counties eastern Tennessee markets and elsewhere. Defendant has done so, and is continuing to do so, with the knowledge, purpose, and intention that its practices have this adverse effect on competition and on its competitors. In particular, Defendant has attempted to, and has unlawfully interfered with, Plaintiff's ambulance service contracts with McMinn County, Plaintiff's employee contracts, and with Plaintiff's prospective business relationships with its employees and with McMinn County in the following manner:

    **(a)**    attempting to intimidate Plaintiff from competing with Defendant in the ambulance services business in McMinn, Polk, Knox, and Unicoi Counties in Tennessee;

    **(b)**    offering Plaintiff's employees in McMinn and Polk Counties money and other things of value if such employees agreed to violate their duties to Plaintiff by failing to show up for their next scheduled shift so that Plaintiff would be unable to perform its contract with McMinn County; and

    **(c)**    attempting to exclude Plaintiff from the ambulance services market in Polk County through sham and baseless litigation claiming Defendant has the right to be the sole supplier of such services in Polk County.

Meeting the contractual emergency response time is an important component of competition in the ambulance services market. Defendant's conduct was intended to, and had the effect of, diminishing and eliminating competition and injuring Plaintiff's ability to compete and to establish Defendant's control over prices in the ambulance services markets.

12. On information and belief, Plaintiff avers that Defendant is secretly planning to continue to attempt to destroy Plaintiff's business by continuing its efforts to induce Plaintiff's employees to refuse to perform duties for Plaintiff and instead to become employees of Defendant. Such conduct has both the purpose and effect of monopolizing and attempting to monopolize the ambulance services business in order to control prices in the relevant geographic markets. The result inevitably will be, and Defendant knows and intends that it will be, to further enhance Defendant's efforts to monopolize the markets for ambulance services, to further impair Plaintiff's competitive position in those markets and to enhance Defendant's competitive position at the expense of Plaintiff and other competitors.

13. As a direct and proximate result of the unlawful acts and practices described and set forth in this Complaint, Plaintiff has been damaged in its business and property in the following ways, among others:

   **(a)** Plaintiff has lost the revenues from ambulance services which it would have earned but for Defendant's unlawful conduct, and Plaintiff's competitive position in the market for ambulance services has been damaged seriously and, perhaps, irreparably;

   **(b)** Plaintiff has been forced to attempt to recruit and train replacement employees because its then existing employees were raided by Defendant and illegally induced to violate their duties of loyalty to Plaintiff and to leave Plaintiff's employ and become employees of Defendant; and

   **(c)** Plaintiff's ability to compete in the market for ambulance services has been seriously and, perhaps, irreparably injured by Defendant's acts. Defendant's unlawful conduct has greatly increased the risk and uncertainty associated with the operation of Plaintiff's business. As a result, Plaintiff's ability to bid for and carry out public contracts has been injured,

Case 1:11-cv-00045-CLC-SKL   Document 1   Filed 03/02/11   Page 6 of 12   PageID #: 6

deterred, and curtailed. In addition, Defendant's conduct will allow it to raise prices for ambulance services to public entities, such as counties and cities, in the absence of lawful competition from Plaintiff and others.

14. The unlawful acts and practices described and set forth in this Complaint will continue to injure Plaintiff in the future with the result that Plaintiff's competitive position in the market for ambulance services will be impaired even more seriously, unless Defendant's unlawful conduct is enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. That this Court adjudge and decree that Defendant has utilized its monopoly position and its monopoly power in the market for ambulance services to obtain an unfair competitive advantage, to attempt to monopolize, and to monopolize, trade and commerce in the markets for ambulance services in violation of the antitrust laws of the United States.

B. That this Court awards to Plaintiff three (3) times the amount of monetary damages, damages which the evidence shows that it suffered as a direct and proximate result of Defendant's violations of the antitrust laws of the United States.

C. That this Court issue a preliminary and then a permanent injunction restraining Defendant, its officers, directors, employees, agents, representatives and successors in interest from using its monopoly position in ambulance services to monopolize or attempt to monopolize such market by contacting and/or offering Plaintiff's employees inducements to violate such employees' duties to Plaintiff or to otherwise fail or refuse to perform their duties to Plaintiff.

D. That the Court award Plaintiff the costs of this action, including reasonable attorneys' fees.

E. That the Court grants such other and further relief as the nature of the case may require and as the Court may deem just and proper.

## COUNT II:

### INTENTIONAL INTERFERENCE WITH EXISTING CONTRACT AND BUSINESS RELATIONSHIP: McMINN COUNTY

15. Plaintiff ICare re-alleges and incorporates by reference paragraphs 1-14 of this Complaint as though fully set forth herein.

16. Plaintiff ICare began providing emergency and non-emergency ambulance services to McMinn County, Tennessee following the county's approval on January 11, 2010 of the transfer of the county's 911 emergency medical services (EMS) contract to Plaintiff from Med-Trans of Tennessee, Inc. ("Med-Trans), the assets of which Plaintiff acquired through Med-Trans' bankruptcy.

17. The transferred Med-Trans contract had an expiration date of June 30, 2012.

18. At the same county meeting on January 11, 2010, Defendant Rural/Metro was approved by McMinn County to receive a six month license to operate as a non-emergency service provider for the county.

19. On July 19, 2010, McMinn County approved a one year license for Defendant Rural/Metro to operate as a non-emergency provider the county.

20. Throughout this time period, Defendant Rural/Metro had knowledge of Plaintiff ICare's 911 EMS contract with McMinn County.

21. Defendant Rural/Metro had no intention of waiting two more years for Plaintiff's 911 EMS contract to expire before it could gain complete control over McMinn County's ambulance service.

22. On or about December 6, 2010, Defendant Rural/Metro, with the express intent to injure Plaintiff's business relationship and to terminate Plaintiff's existing contract with McMinn County and to monopolize and attempt to monopolize the ambulance services business in McMinn and Polk Counties, contacted Plaintiff's employees in McMinn and Polk Counties and offered them $1000 to not show up at their next work shift for Plaintiff and instead become employees of Defendant Rural/Metro.

23. Defendant Rural/Metro's actions were designed to place Plaintiff ICare in breach of its 911 EMS contract with McMinn County, and provide grounds for the immediate termination of the contract, due to Defendant's creation of a situation which created a "danger to the well-being of the residents of McMinn County."

24. Plaintiff ICare was forced to breach its contract with McMinn County because Plaintiff could not guarantee that it had the personnel needed to meet the contract requirements.

25. Defendant Rural/Metro, having crippled Plaintiff's response ability, was then appointed McMinn's new 911 EMS provider for a 90 day period.

26. Plaintiff ICare suffered damages as a result of Defendant Rural/Metro's intentional actions set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That this Court award to Plaintiff monetary damages in an amount which the evidence shows that it suffered as a direct and proximate result of Defendant's intentional interference with Plaintiff's existing business relationship with McMinn County.

B. That the Court award Plaintiff the costs of this action, including reasonable attorneys' fees.

C. That the Court grant such other and further relief as the nature of the case may require and as the Court may deem just and proper.

## COUNT III:

### INTENTIONAL INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIP AND CONTRACTUAL RELATIONSHIPS WITH ITS EMPLOYEES

27. Plaintiff ICare re-alleges and incorporates by reference paragraphs 1-26 of this Complaint as if fully set forth herein.

28. Plaintiff ICare has had agreements with its employees in McMinn and Polk Counties.

29. In December, 2010, Defendant Rural/Metro, with the express intent to injure Plaintiff's business relationship with its employees and its contractual relationship with its employees, contacted Plaintiff's employees and offered them $1000 to not show up at their next work shift for Plaintiff and instead become employees of Defendant Rural/Metro.

30. Throughout this time period, Defendant Rural/Metro had knowledge of Plaintiff ICare's existing business relationship and employment contracts with its employees in McMinn and Polk Counties.

31. Defendant Rural/Metro's intentional interference with Plaintiff ICare's business relationship and employment contracts with its employees forced Plaintiff to cease providing services within Polk and McMinn Counties.

32. Plaintiff ICare was injured and suffered damages as a result of Defendant Rural/Metro's intentional actions set forth herein which were for an improper and illegal purpose to monopolize and attempt to monopolize the ambulance service business in Polk and McMinn Counties.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. That this Court award to Plaintiff monetary damages in an amount which the evidence shows that it suffered as a direct and proximate result of Defendant's intentional interference with Plaintiff's contractual relationship with its employees and with Plaintiff's prospective business relationship with its employees.

B. That the Court award Plaintiff the costs of this action, including reasonable attorneys' fees.

C.  That the Court grant such other and further relief as the nature of the case may require and as the Court may deem just and proper.

Respectfully submitted,

Dated: _____

_____
Richard J. Braun, Bar No# 010346
BRAUN & ASSOCIATES PLLC
501 Union Street, Suite 500
Nashville, Tennessee 37219
Telephone: (615) 259-1550

Attorney for Plaintiff, ICare-EMS, Inc.