UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ICARE-EMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:11-CV-45 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| RURAL METRO CORP., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

On June 1, 2012, the Court conducted a hearing pursuant to its responsibility under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to serve as the gatekeeper for any proposed expert testimony under Fed. R. Evid. 702. Defendant Rural Metro Corp. ("Defendant") challenged the admissibility of Plaintiff Icare-EMS, Inc. ("Plaintiff" or "Icare")'s proposed expert, Dr. Nicole Thorne Jenkins ("Jenkins"). For the reasons explained below, the Court concludes Jenkins testimony is admissible under Fed. R. Evid. 702. Accordingly, the Court **DENIES** Defendant's motion in limine to exclude Jenkins's testimony (Court File No. 28).

**I. BACKGROUND**

Both Plaintiff and Defendant provided emergency medical services and medical transportation services in the Eastern District of Tennessee. For this antitrust action, the parties have agreed the relevant geographic market includes McMinn and Polk Counties, and the relevant product market is the provision of ambulance services. Plaintiff's complaint alleges Defendant engaged in anticompetitive practices in an effort to drive Plaintiff out of the relevant market. In particular,

Plaintiff alleges 1) Defendant unlawfully induced Plaintiff's employees to break their contract with Plaintiff; and 2) Defendant attempted to exclude Plaintiff from the ambulance services market in Polk County through litigation. Plaintiff intends to call Jenkins to testify regarding an appropriate calculation of damages. In her expert report, Jenkins concluded Plaintiff "incurred an estimable loss on establishment and operations in the amount of $1,977,713," which would also "represent a loss of goodwill or reputation of a comparable amount" (Court File No. 28, Jenkins Report, p. 4).

Defendant filed a motion in limine to exclude Jenkins's proposed testimony on the grounds it was neither relevant nor reliable (Court File No. 28). After concluding the proposed testimony satisfied the relevance prong under *Daubert* and Rule 702, the Court determined it did not have enough information from the parties's briefs to decide whether Jenkins's proposed testimony was sufficiently reliable. Accordingly, the Court reserved ruling on Defendant's motion (Court File No. 73) and set a *Daubert* hearing.

## II. DISCUSSION

### A. *Daubert* Standard

Defendant challenges Jenkins's proposed testimony on the grounds her testimony does not satisfy the requirements for admission of expert testimony under Fed. R. Evid. 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 reflects decisions by the United States Supreme Court in *Daubert* and *Kumho Tire* which establish district courts' role as a gatekeeper to exclude unreliable expert testimony. *See In Re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (discussing *Daubert* and *Kumho*). In deciding the admissibility of proposed expert testimony in a recent antitrust case, the Sixth Circuit identified three requirements in Rule 702. First, the proposed expert must have the requisite qualifications, whether it be through knowledge, skill, experience, training, or education. *Id.* at 529. Second, the proposed testimony must be relevant, which entails the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Finally, the proposed expert testimony must be reliable. *Scrap Metal*, 527 F.3d at 529. Reliability can be assessed in a number of ways. Testimony can be reliable if it is "based on sufficient facts or data," or "the product of reliable principles and methods," which the expert in turn has applied to the facts of the case. Fed. R. Evid. 702. Additionally, a district court determining the reliability of proposed expert testimony can consider "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir.2001) (citing *Daubert*, 509 U.S. at 593–94).

  **B.**  **Jenkins's Proposed Testimony**

  The focal point of Jenkins's testimony at the *Daubert* hearing concerned whether she used a reliable methodology in determining the loss suffered by Plaintiff.[1] Jenkins explained she used

---

[1] Defendant stipulated at the outset of the hearing that Jenkins was a qualified expert, and the Court determined, based on the parties' briefs, her proposed testimony was relevant. Accordingly, the hearing only addressed whether Jenkins's methodology was sufficiently reliable to pass muster under *Daubert*.

3

the cost methodology in determining Icare's losses.  According to Jenkins, she did not rely upon a more typical valuation method because of the short history of Plaintiff's business.  The cost methodology, which involves tallying up the various costs associated with forming a business–including, *inter alia*, the cost of creating the business plan, organizational fees, deferred compensation of the principal, equity investment, loans from potential shareholders in the form of promissory notes, loans secured by the fixed assets of the business, and other expenses–is a recognized and established procedure for valuing a business.  According to Jenkins, the cost methodology is not an optimal method for valuation, but was, under the circumstances, the most accurate way for her to value Plaintiff's business.

In performing her valuation of Plaintiff's business, Jenkins collected information from a handful of different sources.  Attached as Exhibit 2 to her expert report is a list of twelve documents she reviewed in reaching her conclusions.  These documents include Icare's business plan, profit and loss statements from the business's inception in February 2010 until November 30, 2010, monthly balance sheets and income statements for these months, Icare's 2010 preliminary tax return, and a client-prepared schedule of outstanding debts to creditors.  In addition to reviewing these documents, Jenkins met with Gary Walker, a principal at Icare.  Jenkins testified on cross examination she relied on information provided by Walker both in conversation with him and in documentation he provided.  In her redirect testimony, Jenkins stated reliance on client-prepared schedules and documents is generally accepted in the accounting field when performing a valuation using the cost method.

When asked by Defendant's counsel whether Icare was ever likely to experience a positive cash flow, Jenkins indicated she was not asked to perform this analysis and did not do so.  She

4

further stated in her redirect testimony it was not a generally accepted practice for accountants to speculate concerning future cash flows. Jenkins did testify that the profit and loss statements and balance sheets she reviewed showed losses for each month of Icare's operation.

Following Jenkins's testimony, the Court heard argument from the parties. Plaintiff argued her testimony should be admitted under Fed. R. Evid 702 because Jenkins had relied on a generally accepted approach to valuation, the cost method, in determining the value of Icare's business, and had conducted her analysis in a manner recognized among the profession. To the extent Jenkins's testimony proved problematic, Plaintiff contended, the issue was one of weight and not admissibility. In response, Defendant argued 1) Jenkins had never shown her numbers were accurate or came from an accurate source, and instead relied on client-prepared materials; 2) her testimony and report simply lumped together various debts and derived a valuation from those debts notwithstanding the specific function of the individual debts; and 3) Jenkins's testimony and report neglected a crucial aspect of timing, namely, that all the debts were incurred prior to any alleged wrongdoing by Defendant.

While Defendant's arguments raise significant concerns regarding the extent to which a jury may credit Jenkins's testimony, the Court agrees with Plaintiff that Defendant's attacks raise questions of weight, not admissibility. When wearing its gatekeeper hat, the Court does not assess whether a proposed expert's testimony is credible or accurate; instead, the proper analysis concerns whether that testimony bears the proper hallmarks of reliability. *See Scrap Metal*, 527 F.3d at 529-30 ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."). Had Defendant established Jenkins relied on

5

speculation instead of generally accepted accounting practices in reaching her conclusion, the Court would properly exclude her testimony. *Id.* at 530. But where, as here, the proposed expert has indicated reliance on a reasonable factual basis supported by generally accepted practices, a court must admit the expert's testimony, and allow a jury to decide how much weight, if any, to give it. *Id.*; *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir.1993) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis.") (citation omitted).

The absence of any evidence undermining Jenkins's testimony buttresses the Court's decision. Defendant chose to not present any evidence. Thus, the Court did not have any evidence before it that the cost method is not a proper accounting methodology. Nor did the Court have before it any evidence that Jenkins improperly applied the cost methodology. Therefore the only evidence the Court had to decide the reliability of the method used by Jenkins was Jenkins's testimony. Although Jenkins herself noted the cost method she used was not an optimal method of valuation, she made clear the method itself is reliable and generally recognized in the field. Thus, Jenkins's testimony is admissible as expert testimony under Fed. R. Evid. 702 and the Supreme Court's decisions in *Daubert* and *Kumho Tire*.

### III.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's motion to exclude Jenkins's testimony (Court File No. 28).

**SO ORDERED.**

6

**ENTER.**

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**/s/